Debra L. Wabnik (dw-0944)
Stagg, Terenzi, Confusione & Wabnik, LLP
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4504
dwabnik@stcwlaw.com

*Attorneys for Plaintiffs*
*L.S. and R.S., individually,*
*and as parents and natural guardians*
*of infant E.S.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
L.S. and R.S., individually, and as parents and natural guardians of infant E.S.,

                Plaintiffs,

-against-

EAST WILLISTON UNION FREE SCHOOL DISTRICT, STEPHEN KIMMEL, JAMES MCCABE, KAREN STEIN, ASHLEY GRECO, AND TOM FITZPATRICK,

                Defendants.
----------------------------------------------------------------------X

Docket No.: 2:19-cv-2222

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs L.S. ("L.S.") and R.S. ("R.S."), individually, and as parents and natural guardians of infant E.S. ("E.S.") (collectively "Plaintiffs"), by their attorneys, Stagg, Terenzi, Confusione & Wabnik, LLP, complaining of Defendants East Williston Union Free School District ("the District"), Stephen Kimmel ("Kimmel"), James McCabe ("McCabe"), Karen Stein ("Stein"), Ashley Greco ("Greco") and Tom Fitzpatrick ("Fitzpatrick") (collectively "Defendants"), allege as follows:

## NATURE OF THE CASE

1. E.S., a female, was enrolled as a 7th grade student at The Willets Road School (the "School") in the 2017/2018 school year. Male student L.K. ("L.K.") was also a 7th grade student at the School.

2. Beginning in February 2018, L.K. began targeting E.S. with a pattern of inappropriate harassing, and mentally damaging behavior, which over time escalated to include instances of inappropriate communications and touching, sexual harassment, and sexual activity on District grounds.

3. L.S. and R.S. reported L.K.'s conduct to Defendants, thereby providing actual notice. Defendants failed to safeguard E.S., despite repeated assurances they would do so.

4. As a result of the intentional and/or negligent violation of policies, rules, regulations, protocols and guidelines by Defendants; failure to protect by Defendants; breach of duty by Defendants; negligent performance of duties of Defendants; and negligent training, supervision, retention, hiring and control of students at the School and staff employed by the School and the District, Plaintiffs suffered extreme emotional pain, trauma, distress, mental anguish, and psychological injuries, including but not limited to: intentional infliction of emotional distress; negligent infliction of emotional distress; humiliation; fear; discomfort and anxiety; loss of enjoyment of life; costs for medical and psychological treatment; and attorneys' fees. Further, Defendants are vicariously liable pursuant to the doctrine of respondent superior for violations of state tort laws committed by and through their agents, officers and/or employees.

5. Upon information and belief, Defendants had actual and/or constructive notice that L.K. had previously engaged in similar instances of inappropriate conduct before his interaction with E.S. and/or a propensity to engage in such inappropriate conduct. Further,

2

Defendants had actual notice that L.K. had engaged in inappropriate conduct of a sexual nature with E.S. Defendants negligently, carelessly, recklessly and with deliberate indifference continued to allow L.K. to have unsupervised contact with E.S., failed to act to prevent L.K. having unsupervised contact with E.S., and failed to otherwise take action to safeguard E.S. from a known harasser, thereby subjecting E.S. to discrimination which was so severe, pervasive, and objectively offensive that it effectively prevented E.S. from accessing educational opportunities and benefits.

## **PARTIES**

6. At all relevant times, Plaintiffs were and are residents of Nassau County, New York.

7. At all relevant times, the District was and is a municipality which controlled the School, and is located at 11 Bacon Road, Old Westbury, New York 11568.

8. At all relevant times, Kimmel was and is an individual employed by the District to work at the School as its Principal. Kimmel was responsible for overseeing and administering the general functioning of the School. He is being sued herein in both his individual and official capacities.

9. At all relevant times, McCabe was and is an individual employed by the District to work at the School as Dean. He is being sued herein in both his individual and official capacities.

10. At all relevant times, Stein was and is an individual employed by the District to work at the School as a Guidance Counselor. She is being sued herein in both her individual and official capacities.

11. At all relevant times, Greco was and is an individual employed by the District as a Lacrosse Coach. She is being sued herein in both her individual and official capacities.

12. At all relevant times, Fitzpatrick was and is an individual employed by the District as a Lacrosse Coach. He is being sued herein in both his individual and official capacities.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the action under 28 U.S.C. § 1331 and 20 U.S.C. § 1691.

14. Pursuant to 28 U.S.C. § 1367, this Court has jurisdiction over the New York State claims by way of supplemental jurisdiction.

15. All of Plaintiffs' federal and state claims arose within Nassau County, New York, within the Eastern Judicial District of New York.

16. In addition, Plaintiffs are residents of Nassau County.

17. Accordingly, venue is proper in the Eastern Judicial District of New York pursuant to Title 28 U.S.C. §§1391(b) and 1391(c), and this case should be assigned to the federal courthouse located in Central Islip, New York.

## STATEMENT OF FACTS

18. During the 2017-18 school year, E.S. was a student at the School in the Seventh grade.

19. During the 2017-18 school year, L.K. was a student at the School in the Seventh grade.

20. L.K. was a popular male student at the School, considered to be good looking and athletic. He was larger than most, if not all, of the other boys. E.S. was less popular, and did not

have a large group of friends. E.S. suffered from insecurity, and started therapy in January 2018 to address some of her self-esteem and other related issues.

22. L.K. made E.S. believe that he "liked" her, and beginning in February 2018, set on a course to obtain sexual favors from E.S. in exchange for his continuing to "like" her.

22. On or about March 20, 2018, E.S. stayed after school for Media Center, a homework club overseen by Stein. At L.K.'s behest, E.S. asked to go the bathroom. On the way back to Media Center, L.K. stopped her and convinced her to go to the girls' locker room, which he knew was empty.

23. As there was no monitoring of the hallways or the locker room, E.S. and L.K. were in the locker room, unnoticed and unsupervised for more than four minutes. L.K. asked E.S. to take her shirt off. E.S. stated she wanted to wait until they were older. L.K. insisted that others in 7th grade had kissed using tongue and had sex, that E.S. would enjoy it, and assured E.S. it would be fine. E.S. was scared to leave. They kissed using tongue, and L.K. grabbed E.S.'s buttocks. He also took off his shirt and her shirt.

24. The next day, L.K. began pressuring E.S. to do more sexually. He tried to convince E.S. to meet again in the girls' locker room, this time to have sex. L.K. advised he would bring a condom or "tape" his penis.

25. On March 25, 2018, L.S. reported to Stein that E.S. and L.K. had met in the girls' locker room and kissed, that they had a plan to meet there again to have sex, and that E.S. was afraid to say no to L.K. and was concerned about the repercussions if she did. L.S. stated:

> [E.S.] is in a very vulnerable place and is being manipulated by this boy into believing that he likes her. She has told me he is a "popular" boy. She has also told me that he does not talk to her or acknowledge her socially at school. She is desperately seeking approval and validation from boys and is an easy target for someone to take advantage of.

5

26. Stein responded by acknowledging that the situation was "serious" and assuring L.S. that E.S. would "be safe at school."

27. L.S. and R.S. met with Stein and McCabe on March 26, 2018. They viewed the videotape from the camera in the hallway which showed that E.S. and L.K. had been in the girls' locker room unsupervised and alone for more than 4 minutes.

28. Stein and McCabe admitted there was no supervision outside the locker rooms. They also admitted that L.K. had been in trouble before, and "was not a boy who takes no easily for an answer." They promised to keep their eye on E.S.

29. The following day, Kimmel called R.S. and said he would make sure E.S. was safe and R.S. should not worry.

30. On March 27, 2018, L.S. reported to Stein that E.S. did not want to go to school, was anxious, felt like the situation was her fault, and was concerned that L.K. would be mad at her. L.S. also asked that E.S.'s teachers be apprised of what was going on. Stein responded that the teachers had been spoken to. She assured L.S. that the School was doing everything it could to ensure E.S.'s safety, "This includes before/after/lunch/buses/sports and Friday Night Rec. etc."

31. Stein also advised that E.S. and L.K. had been told that there were cameras everywhere and if they broke the rules again, there would be consequences.

32. Although Stein acknowledged that the situation was not E.S.'s fault, she nonetheless started to place responsibility on E.S., a mere 12-year-old girl suffering from self-esteem issues, who Stein knew was "desperately seeking approval from boys" and "an easy target." Stein stated E.S. made a "poor decision" entering the locker room with L.K. and "must make sure that she does not do so again with him or anyone else" and that E.S.'s responding to

L.K.'s continued efforts to meet by saying she was busy was not sufficient and that she had to be "explicit and firm."

33. E.S. then sought psychiatric help in addition to the therapy she was already getting. E.S. was evaluated for depression and anxiety. She was also evaluated for a previous diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD").

34. Defendants were already aware that E.S. had been diagnosed with ADHD in 2016. In addition, in March 2018, L.S. had requested a meeting to discuss accommodations and the support E.S. needed for the following school year. She provided a letter from E.S.'s psychiatrist regarding her ADHD diagnosis. The following month, L.S. notified the School that the psychiatrist was asking for attention profile sheets to be filled out by E.S.'s teachers. As such, Defendants were or should have been aware that E.S. had issues with impulse control, a common symptom of ADHD.

35. During the 2018 Spring Break, L.K.'s pursuit of E.S. escalated. He sent her a picture of his penis, and convinced her to send naked photographs in response. She complied because she felt threatened and was scared that L.K. would not like her.

36. When they returned to the School after break, E.S. started practice for the girls' lacrosse team. L.K. joined the boys' lacrosse team after practices had already begun, knowing that he would be bussed to the Wheatley Road High School (the "High School") with E.S. for practice.

37. Defendants did not notify L.S. or R.S. that L.K. had joined the lacrosse team or that E.S. and L.K. would be bussed together to the High School.

38. On April 17, 2018, at L.K.'s instruction, E.S. asked Greco if she could leave the field and go inside the High School. Greco said "of course" without asking why E.S. needed to leave, and without parental permission, in violation of protocols.

39. L.K. also left the field with the permission and/or without the knowledge of his lacrosse coach, Fitzpatrick.

40. L.K. followed E.S. into the High School, and L.K. found an open classroom with a closet where they had manual and oral sex.

41. On April 19, 2018, E.S. and L.K. were again at the High School for lacrosse practice. E.S. asked Greco to leave the field again, saying she had to go somewhere with her mother. Greco allowed E.S. to go, even though E.S. did not provide a note as required, and Greco did not ask any questions or in any way check if E.S. actually had to be somewhere with her mother or if her mother was even there.

42. L.K. followed E.S., although he also did not have a note for Fitzpatrick.

43. L.K. found a different unlocked room with a closet in the High School, where L.K. again pressured E.S. to perform sexual acts. The sexual acts intensified to include anal sex. E.S. left physically hurting, and was bleeding vaginally from the physical forcefulness used by L.K.

44. The following day, April 20, 2018, E.S. asked Greco to leave practice 20 minutes early. She did not provide Greco with any reason for leaving, nor did Greco ask for any. Nonetheless, Greco allowed E.S. to leave.

45. L.K. left his lacrosse practice as well.

46. L.K. again located an unlocked room. E.S. was able to avoid any vaginal penetration by claiming the bleeding from L.K.'s forcefulness the day before was her menstrual period, but he demanded oral sex and performed anal sex on her.

47. When L.S. came to the High School to pick up E.S., she was not with the other girls on the team. L.S., fearful for the safety of her daughter, went to the front desk to inquire as to E.S.'s whereabouts. She was not on the field, in the girls' bathroom or in the locker room. Sometime later, E.S. was found walking down a hallway. She admitted that she had been with L.K. and that she had been pressured by L.K. to engage in sexual acts inside closets in open classrooms on three occasions that week.

48. On April 21, 2018, L.S. advised Stein that L.K. and E.S. had met during the week at the High School during afterschool sports and that E.S. had been forced into sexual acts with L.K. L.S. notified Stein that she had located messages from L.K. planning for it to happen. She stated, "This boy is preying on my daughter and pressuring her to meet and do sexual things with him. As you know, she is not emotionally well and is engaged in counseling and psychiatric care to extricate herself from this situation due to her fear of him, rejection and overbearing pressure."

49. The following morning, L.S. and R.S. went to the School and met with McCabe and Stein. Despite their previous reassurances that E.S. would be "safe" and "was being watched," McCabe and Stein refused to accept any responsibility. They wanted to know why E.S. did not say no, and why she went along with L.K.'s plans. They admitted Greco, Fitzpatrick, and the High School principal had not been advised of the issues with E.S., and became defensive when asked why that had not been done. They insisted that because it was at the High School, it was not their problem. They discouraged L.S. and R.S. from filling out a complaint under the Dignity for All Students Act.

50.     On April 24, 2018, Kimmel called R.S. and said he had spoken to L.K., that E.S. and L.K. had feelings for each other and were merely "experimenting." He could not explain how E.S. had left lacrosse practice, and admitted she should have had a note to be able to leave. He also could not explain why rooms in the High School were left unlocked. He tried to blame E.S. for lying to Greco and despite L.S.'s previous notice that E.S. was suffering from self-esteem issues and could be made a victim, stated, "I doubt this boy has a magical hold on your daughter that she would do anything he wants."

51.     Thereafter, E.S. was subjected to bullying, taunting, and verbally abusive insults during the school day from several students. She was called a "slut," among other names. E.S. was stigmatized by the rumors. She was unable to go to School on numerous days. She often tried to hide from L.K. and her harassers.

52.     Instead of addressing the bullying, Defendants yelled at E.S. for discussing the incidents with other students, and complained that they had to discuss the issue with parents of other students.

53.     E.S. expressed concern to Defendants about going to Outdoor Education Week, where 7th graders go offsite to a camp upstate. Although Defendants offered a "shadow" for E.S. on the trip, she was apprehensive about the associated stigma. When told of E.S.'s concerns about the trip, Stein said, "we all have white towels, yours is a little bit soiled." Stein's suggestion that E.S. was somehow dirty because of her experience with L.K. compounded the bullying she was already experiencing from other students, and E.S. felt she could not participate in Outdoor Education Week.

54.     E.S. was removed from lacrosse by Defendants as a "punishment," and likely could not have participated anyway due to the associated coercive and forceful sexual interaction

with L.K.. At least one parent of a fellow student had prohibited her son from interacting with E.S..

55. The actions of Defendants caused and continue to cause Plaintiffs to suffer damages, including but not limited to the following: extreme emotional pain, depression, trauma, distress, mental anguish, anxiety, depression, humiliation, embarrassment, fear, loss of enjoyment of life and other psychological injuries, medical costs for physical and psychological treatment and attorneys' fees and costs.

56. Further, Defendants' actions damaged E.S.'s reputation, which interfered with her ability to attend school and maintain her grades, and even forced Plaintiffs to put their house up for sale and move out of the District. Plaintiffs had not purchased a house, as they were not prepared to move, and were forced to rent.

57. Students who had been bullying E.S. at the School contacted students at her new school and told them what had happened between E.S. and L.K.. E.S. was once again subjected to bullying and taunting.

58. In addition, students from the School continue to contact E.S. and bully her and taunt her related to L.K.

59. On July 17, 2018, a Notice of Claim was duly presented to Defendants on behalf of Plaintiffs.

60. E.S. complied with all conditions precedent for filing suit, including but not limited to being examined under oath pursuant to Section 50-h of the General Municipal Law.

61. More than 30 days have passed since the Notice of Claim was served, and Plaintiffs' claim has not been adjusted or settled.

## AS A FIRST CLAIM AGAINST
## EAST WILLISTON UNION FREE SCHOOL DISTRICT
### (Violations of Title IX)

62. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

63. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1691(a).

64. Upon information and belief, the District receives federal financial assistance, and is therefore subject to Title IX.

65. L.K. engaged in a series of inappropriate, offensive, intimidating and discriminatory acts toward E.S. based upon her sex, which altered the terms and conditions of her educational experience at the School.

66. Upon information and belief, prior to L.K.'s sexual harassment of E.S., another female student had complained to Defendants about improper, intimidating and harassing behavior of L.K..

67. Thus, Defendants knew or should have known of the propensity for L.K. to sexually harass and abuse female students, but did not take appropriate remedial action.

68. Defendants knew or should have known of the propensity for L.K. to sexually harass and abuse female students, but did not restrict his access to female students, including E.S.

69. Further, Defendants had actual notice that L.K. was harassing and intimidating E.S., and engaging in age inappropriate sexual activity with her.

70. Defendants acted with deliberate indifference to the sexual harassment and abuse of E.S. by L.K. by failing to, *inter alia*, take remedial action against L.K., failing to advise other personnel of the sexual harassment, discrimination and/or abuse by L.K., failing to supervise E.S. and/or L.K., and allowing L.K. access to and contact with E.S.

71. As a result of the foregoing actions of Defendants, E.S. was discriminated against based upon her sex in violation of Title IX, and suffered damages, including but not limited to lost educational opportunities, damage to E.S.'s reputation, and emotional distress and humiliation.

72. E.S. is entitled to punitive damages, plus attorneys' fees and costs.

### AS A SECOND CLAIM AGAINST DEFENDANTS
### (Negligence)

73. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

74. Defendants owed and continue to owe Plaintiffs a duty to take due care to protect the safety of students enrolled in the School.

75. Defendants were under a duty to supervise the students enrolled in the School in the manner of a reasonably prudent parent.

76. Defendants' duty extended to include a duty to supervise and monitor the other students of the School.

77. Defendants were negligent in that they failed to take due care to supervise and monitor the students of the School, including E.S. and L.K.

78. Defendants were negligent in that they failed to take due care to protect E.S. from persons who they knew or should have known had propensity to commit sexual misconduct, failed to train their employees in prevention of sexual misconduct, failed to promulgate and

enforce policies and procedures for prevention of sexual misconduct, hired and retained Kimmel, McCabe, Stein, Greco and Fitzpatrick, failed to exercise reasonable care to investigate the behavior of L.K., failed to create or develop a plan to address the behavior of L.K., failed to train District personnel in responding to student sexual harassment and abuse, failed to provide a protective environment to E.S., failed to exercise reasonable care to correct L.K.'s harmful propensities, failed to institute adequate procedures to prevent a recurrence of L.K.'s sexual harassment and abuse of E.S., failed to exercise reasonable care to protect E.S. from L.K., and otherwise were careless, reckless and/or negligent.

79. The negligence of Defendants, their agents, employees and/servants damaged E.S., causing her lost educational opportunities, severe emotional distress, and other consequential damages to be determined at trial.

80. The negligence of Defendants, their agents, employees and/servants also damaged L.S. and R.S., causing them severe emotional distress, forcing them to sell their home and rent a home so they would not have to send E.S. to school in the District, and other consequential damages to be determined at trial.

81. By reason of the foregoing, Defendants are liable to Plaintiffs for compensatory damages in an amount to be determined at trial, plus punitive damages.

### AS A THIRD CLAIM AGAINST DEFENDANTS
### (Negligent Infliction of Emotional Distress)

82. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

83. Commencing in February 2018, L.K. began a series of inappropriate, offensive, intimidating and discriminatory acts toward E.S. based upon her sex, which altered the terms and conditions of her educational experience at the School and caused her great emotional harm.

84. Defendants were negligent in that they failed to take due care to protect E.S. from persons who they knew or should have known had propensity to commit sexual misconduct, failed to train their employees in prevention of sexual misconduct, failed to promulgate and enforce policies and procedures for prevention of sexual misconduct, hired and retained Kimmel, McCabe, Stein, Greco and Fitzpatrick, failed to exercise reasonable care to investigate the behavior of L.K., failed to create or develop a plan to address the behavior of L.K., failed to train District personnel in responding to student sexual harassment and abuse, failed to provide a protective environment to E.S., failed to exercise reasonable care to correct L.K.'s harmful propensities, failed to institute adequate procedures to prevent a recurrence of L.K.'s sexual harassment and abuse of E.S., failed to exercise reasonable care to protect E.S. from L.K., and otherwise were careless, reckless and/or negligent.

85. The acts and/or omissions of Defendants, their agents, employees and/servants resulted in E.S. suffering great anxiety, discomfort and mental anguish.

86. The acts and/or omissions of Defendants, their agents, employees and/servants also damaged L.S. and R.S., causing them severe emotional distress, forcing them to sell their home and rent a home so they would not have to send E.S. to school in the District, and other consequential damages to be determined at trial.

87. By reason of the foregoing, Defendants are liable to Plaintiffs for compensatory damages in an amount to be determined at trial, plus punitive damages.

## AS A FOURTH CLAIM AGAINST DEFENDANTS
### (Intentional Infliction of Emotional Distress)

88. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if set forth herein more fully at length.

89. L.K. forcibly engaged in sexual acts with E.S.

90. L.K.'s physical touching of E.S. was intentional, unwelcomed and offensive.

91. L.S. and R.S. reported L.K.'s conduct to Defendants.

92. Rather than protect E.S., Defendants blamed E.S., failed to protect E.S., disregarded their duties and/or obligations to E.S., violated their promises to L.S. and R.S., and allowed additional sexual activity to occur on District property.

93. E.S. became a topic of ridicule and rumor at the School, and was continually harassed. She was called names and harassed through social media.

94. The harassment became too hard to bear, and Plaintiffs were forced to move away from the District.

95. A student at the School told students at her new school about what happened with L.K., and E.S. was harassed again.

96. As a result of Defendants' conduct, Plaintiffs suffered from extreme emotional distress, humiliation and embarrassment, for which Plaintiffs are entitled to an award of damages, including punitive damages.

## JURY DEMAND

Plaintiffs request a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiffs respectfully requests a judgment against the Defendants:

A. Awarding Plaintiffs compensatory damages for mental, emotional and physical injury, distress, pain and suffering, humiliation, embarrassment, and injury to E.S.'s reputation in an amount to be determined at trial;

B. Awarding Plaintiffs punitive damages;

C. Awarding Plaintiffs attorneys' fees, costs, and expenses; and

D.  Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful practices.

Dated: Garden City, New York
April 16, 2019

             Stagg, Terenzi, Confusione & Wabnik, LLP

             By: /s/Debra L. Wabnik
                Debra L. Wabnik (dw-0944)
                *Attorneys for Plaintiffs*
                *L.S. and R.S., individually,*
                *and as parents and natural guardians*
                *of infant E.S.*
                401 Franklin Avenue, Suite 300
                Garden City, New York 11530
                (516) 812-4504

To: East Williston Union Free School District
11 Bacon Road
Old Westbury, New York 11568

Stephen Kimmel
Principal
Willets Road School
455 I.U. Willets Road
Roslyn Heights, New York 11577

James McCabe
Dean
Willets Road School
455 I.U. Willets Road
Roslyn Heights, New York 11577

Karen Stein
Guidance Counselor
Willets Road School
455 I.U. Willets Road
Roslyn Heights, New York 11577

Ashley Greco
Lacrosse Coach
The Wheatley School
11 Bacon Road
Old Westbury, New York 11568

Tom Fitzpatrick
Lacrosse Coach
The Wheatley School
11 Bacon Road
Old Westbury, New York 11568